1  GARY E. KLAUSNER (STATE BAR NO. 69077)
   EVE H. KARASIK (STATE BAR NO. 155356)
2  GREGORY K. JONES (STATE BAR NO. 181072)
   STUTMAN, TREISTER & GLATT
3  PROFESSIONAL CORPORATION
   1901 Avenue of the Stars, 12th Floor
4  Los Angeles, CA 90067
   Telephone:  (310) 228-5600
5  Telecopy:  (310) 228-5788

6  Reorganization Counsel for
   Debtor and Debtor in Possession
7
   Debtor's Mailing Address:
8  888 Prospect Street, Suite 230
   La Jolla, California 92037
9

10

11                    **UNITED STATES BANKRUPTCY COURT**

12                    **SOUTHERN DISTRICT OF CALIFORNIA**

13  In re                              )  Case No. 09-19431-LA11
                                       )
14                                     )  Chapter 11
    IMPERIAL CAPITAL BANCORP, INC., a  )
15  Delaware corporation,              )
                                       )  **SECOND INTERIM FEE APPLICATION**
16                                     )  **OF STUTMAN, TREISTER & GLATT**
                    Debtor.            )  **PROFESSIONAL CORPORATION**
17                                     )  **(REORGANIZATION COUNSEL FOR**
    Tax Identification Number: 95-4596322 )  **DEBTOR AND DEBTOR IN**
18                                     )  **POSSESSION) FOR COMPENSATION**
                                       )  **OF SERVICES RENDERED AND**
19                                     )  **REIMBURSEMENT OF EXPENSES**
                                       )  **INCURRED (JULY 1, 2010 TO**
20                                     )  **OCTOBER 31, 2010); DECLARATION**
                                       )  **OF EVE H. KARASIK IN SUPPORT**
21                                     )  **THEREOF; EXHIBITS**
                                       )
22                                     )
                                       )            Hearing
23                                     )
                                       )  [Hearing to be set by Court]
24                                     )
                                       )
25                                     )
                                       )
26  _____)

27  / / /

28  / / /

546014v.1                                                                    1

# TABLE OF CONTENTS

Page(s)

I. BACKGROUND INFORMATION .................................................................. 1

II. HISTORY OF THE DEBTOR'S CASE ........................................................ 2

    A. The Petition Date ........................................................................ 2

    B. The Debtor's Prepetition Capital Structure and Business Operations................... 2

    C. Events Occurring In Second Period........................................... 2

III. SUMMARY OF SERVICES RENDERED AND FEES INCURRED ........................... 5

    1. Case Administration — Matter No. 010. ................................... 8

    2. Meetings Of And Communications With Creditors — Matter No. 020..... 9

    3. General Business Operations — Matter No. 030.................................... 10

    4. Fee/Employment Applications — Matter No. 040. ................................ 11

    5. Fee/Employment Objections – Matter No. 050. ................................... 12

    6. Financing – Matter No. 060. ....................................................... 13

    7. Claims Administration And Objections — Matter No. 070. .................... 13

    8. Asset Analysis and Recovery – Matter No. 080. ................................... 14

    9. Asset Disposition – Matter No. 90................................................ 16

    10. Plan/Disclosure Statement  - Matter No.  100 ......................... 16

    11. Employee Benefits/Plans – Matter No.  110........................... 17

    12. Litigation — Matter No. 120. ................................................ 18

        a. Rabbi Trust Complaint................................................ 18

        b. The ICBI Complaint ................................................... 19

        c. The Receivership Complaint........................................ 19

        d. The Relief From Stay Motion ..................................... 19

        e. The Withdrawal Motion.............................................. 20

        f. Other Matters ........................................................ 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IV.     SUMMARY OF ACTUAL, NECESSARY EXPENSES ................................................. 21

V.      APPLICABLE AUTHORITY ............................................................................. 22

        A.      Reasonableness of Compensation Requested ........................................ 23

        B.      Novelty And Difficulty of Legal Questions/Skill Requisite to Performing
                Legal Services ............................................................................. 24

        C.      Experience, Reputation And Ability Of The Attorneys..................................... 24

III.    CONCLUSION ............................................................................................. 24

# TABLE OF AUTHORITIES

**CASES**

*In re Auto Parts Club, Inc.,*
211 B.R. 29 (B.A.P. 9th Cir. 1997)................................................................23

*In re Auto Parts Club, Inc.,*
224 B.R. 445 (Bankr. S.D. Cal. 1998) .........................................................23

*In re Montgomery Drilling Co.,*
121 B.R. 32 (Bankr. E.D. Cal. 1990) ...........................................................23

*In re Powerine Oil Co.,*
71 B.R. 767 (B.A.P. 9th Cir. 1986)...............................................................23

*In re Yermakov,*
718 F.2d 1465 (9th Cir. 1983) ......................................................................23

**STATUTES**

11 U.S.C. § 327................................................................................................22

11 U.S.C. § 327(a) .............................................................................................1

11 U.S.C. § 329 ..................................................................................................1

11 U.S.C. § 330..........................................................................................5, 22, 23, 24

11 U.S.C. § 330(a) .....................................................................................22, 23

11 U.S.C. § 331 .......................................................................................11, 24

11 U.S.C. § 365(o) ...........................................................................................13

11 U.S.C. § 504(b) ...........................................................................................27

11 U.S.C. § 1103 ..............................................................................................22

11 U.S.C. § 1107(a) ............................................................................................2

11 U.S.C. § 1108 ................................................................................................2

1    Stutman, Treister & Glatt Professional Corporation ("ST&G" or "Applicant"),

2  reorganization counsel for Imperial Capital Bancorp, Inc. (the "Debtor"), hereby submits its

3  "Second Interim Fee Application of Stutman, Treister & Glatt Professional Corporation

4  (Reorganization Counsel for Debtor and Debtor in Possession) for Compensation of Services

5  Rendered and Reimbursement of Expenses Incurred (July 1, 2010 to October 31, 2010)" (the

6  "Application").  During the period of July 1, 2010 through October 31, 2010 (the "Second

7  Period"), ST&G incurred $635,429.50 in compensation for services rendered, and $34,381.25 in

8  costs incurred for a total amount of $669,810.75.[1]  This Application is supported by the

9  Declaration of Eve H. Karasik (the "Karasik Declaration"), which is attached to this Application.

10    **MEMORANDUM OF POINTS AND AUTHORITIES**

11    **I.**

12    **BACKGROUND INFORMATION**

13    On December 18, 2009 (the "Petition Date"), the Debtor filed its chapter 11 case.

14  On January 11, 2010, the Debtor submitted its "Application for Order Pursuant to 11 U.S.C.

15  §§ 327(a) and 329 Authorizing the Employment and Retention of Stutman, Treister & Glatt, P.C.

16  as Reorganization Counsel for the Debtor and Debtor in Possession" (the "Employment

17  Application") [Docket No. 33].  This Court entered an order approving the Employment

18  Application on January 20, 2010 [Docket No. 41].  A true and correct copy of the Employment

19  Order is attached as Exhibit "A" to the Karasik Declaration.

20    Members of ST&G have extensive experience in the area of insolvency and

21  corporate reorganization and limit their practice primarily to that area.  Attached hereto as

22  Exhibit "B" is a summary of the background and qualifications of the members of ST&G who

23  rendered services to the Debtor during the Second Period.  ST&G has served exclusively as the

24  reorganization counsel for the Debtor during the Debtor's case.

25    On October 18, 2010, this Court entered its "Order on Interim Applications for

26  Compensation and Reimbursement of Expenses" (the "First Interim Order") [Docket No. 352],

27

28  [1]    In reaching this total, ST&G has agreed to write-off approximately $39,000 in fees during the
Second Period.

which, <u>inter alia</u>, approved ST&G's first interim fee application and awarded ST&G fees in the amount of $561,816 and reimbursement of expenses in the amount of $29,528.60 for the period of December 18, 2009 to June 30, 2010, for a total interim award of $591,344.60.

## II.

### HISTORY OF THE DEBTOR'S CASE

**A.    The Petition Date**

The Debtor commenced this chapter 11 case by filing a voluntary petition under chapter 11 of the Bankruptcy Code on the Petition Date.  As permitted by Bankruptcy Code sections 1107(a) and 1108, the Debtor is continuing to operate its business as a debtor in possession.  On March 9, 2010, the Office of the United States Trustee (the "UST") appointed a three member official committee of creditors holding unsecured claims against the Debtor (the "Committee").

**B.    The Debtor's Prepetition Capital Structure and Business Operations**

The Debtor is a diversified bank holding company headquartered in La Jolla, California.  As of the Petition Date the Debtor owned 100% of the common stock of Imperial Capital Bank (the "Bank"), a California state chartered commercial bank that had approximately $4.4 billion in assets and six retail branches located in California, two retail branches located in Nevada, and one retail branch located in Baltimore, Maryland.  On the Petition Date, the California Department of Financial Institutions (the "DFI") closed the Bank and placed it into a receivership with the Federal Deposit Insurance Corporation (the "FDIC").  Subsequently, the FDIC sold certain of the Bank's assets and liabilities to City National Bank.  The Bank had been in business for thirty-five years.  After the seizure of the Bank, the Debtor commenced this chapter 11 case to protect its assets and develop a confirmable reorganization plan by utilizing those assets and potential business opportunities.

**C.    Events Occurring In Second Period**

As this Court is well aware, the Debtor (which has prepetition liabilities of over $100 million) owns a small number of potentially valuable assets that could generate

approximately $35 to $40 million in proceeds for distribution to the Debtor's unsecured creditors. However, the FDIC's assertion of an approximately $48.2 million priority claim, as well as its position that it is entitled to ownership of the Debtor's tax refunds, has complicated the ultimate liquidation and distribution of such assets.  Nonetheless, during the Second Period, with the assistance and guidance of ST&G, the Debtor made significant progress in liquidating its assets, responding to the FDIC's various contentions, and administering its estate.

Among other things, the following events took place during Second Period:

- In response to the FDIC's assertion of an approximately $48.2 million priority proof of claim (which if allowed, would likely lead to a conversion of the Debtor's case from chapter 11 to chapter 7), the Debtor filed its "Objection to Capital Maintenance Claims Portion of Federal Deposit Insurance Corporation's Proof of Claim" [Docket No. 228] (the "Claim Objection");

- The Debtor submitted its 2009 consolidated tax returns, as well as amended tax returns for years 2004 through 2007 to apply the net operating loss carryback from 2009 to each of those years, and to claim the refunds from the loss carrybacks (collectively, the "2009 Returns"). The amount of the refund requested in the 2009 Returns is approximately $17.9 million;

- Due to the FDIC's assertion that it is entitled to recovery of the Debtor's tax refunds, the Debtor commenced an adversary proceeding by filing a "Complaint (I) Seeking a Declaratory Judgment Regarding Ownership of Certain Tax Refunds; and (II) For Actual and Punitive Damages for Injunction for Violation of the Automatic Stay" (the "ICBI Complaint") against the FDIC, which commenced adversary proceeding number 10-90386-LA in the Bankruptcy Court;

- The Debtor responded to the FDIC's motion to withdraw the reference of the Claim Objection and ICBI Complaint;

7

- After the FDIC disallowed the Debtor's proof of claim in the Bank's receivership estate, the Debtor filed its "Complaint: (I) To Avoid and Recover Transfers Pursuant to Sections 547, 548, and 550 of the Bankruptcy Code; (II) For a Declaratory Judgment That Certain Insurance Policies are Property of the Estate; (III) For Indemnification, Contribution, and Reimbursement; (IV) For Damages for Breach of Expense Sharing Agreement; (V) For Reimbursement of Amounts Paid to Employees Under Benefit Plans; (VI) For a Judgment For All Amounts Due; and (VII) For a Declaratory Judgment For Claims Against the Receivership and Deeming Void the FDIC-R's Disallowance of the Receivership Claims" (the "Receivership Complaint"), in the United States District Court for the Southern District of California (the "District Court"), which commenced case number 3:10-cv-02067-MMA;

- The FDIC filed a motion for relief from the stay in order to provide the FDIC with authority to file the 2009 Returns. After the Debtor conferred with the FDIC's counsel about the content of the 2009 Returns, the FDIC withdrew its relief from stay motion;

- After the Debtor and FDIC resolved the relief from stay motion, they reached an agreement on the terms of a stipulation providing that any tax refunds received by the Debtor (the "Tax Refunds") would be placed in an escrow account pending the determination of the ICBI Complaint (the "Escrow Stipulation");

- In order to preserve the value of its net operating losses ("NOLs") for a potential chapter 11 reorganization plan, the Debtor filed a motion to limit trading in its equity interests, which was approved by this Court without the need for a hearing;

- The Debtor filed its "Chapter 11 Liquidating Plan of Reorganization" [Docket No. 347] (the "Plan") and its "Disclosure Statement re: Chapter

8

11 Liquidating Plan of Reorganization" [Docket No. 346] (the "Disclosure Statement") during its exclusivity period;

- The Debtor obtained default or stipulated judgments in its adversary proceeding against Union Bank of California, N.A. and certain individuals, which resulted in the turnover of approximately $6.75 million to the Debtor's estate and dismissal of the adversary proceeding; and

- The Debtor liquidated nearly all of the property of its estate, with the exception of the aforementioned tax refunds, which are pending beofre the Internal Revenue Service (the "IRS").

As demonstrated in more detail below and in Exhibit "E" to the Karasik Declaration, ST&G played a critical role in the Debtor's progress during the Second Period and performed a number of essential tasks for the Debtor.  ST&G has exercised considerable skill and expertise in dealing with the numerous critical issues facing the Debtor, and this Court should enter an order approving this Application on an interim basis.[2]

### III.

### SUMMARY OF SERVICES RENDERED AND FEES INCURRED

During the Second Period, ST&G personnel billed 1,133.7 hours at a blended hourly rate of approximately $560 per hour.  In accordance with the Region XV United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 (the "UST Guidelines"), ST&G has classified its time entries for all of its services to the Debtor as follows:

| Matter Number | Description | Fees Incurred |
|---|---|---|
| 6044-010 | Case Administration | $37,916.50 |

---

[2]   The following disclosures are made pursuant to the UST Guidelines: All quarterly fees have been paid to the UST, and all monthly operating reports have been filed.  As of October 31, 2010, the Debtor was in possession of $12,060,235.07 in unencumbered cash. The nature of accrued unpaid administrative expenses is professional fees that will be the subject of the second interim fee applications.

| Matter Number | Description | Fees Incurred |
|---------------|-------------|---------------|
| 6044-020 | Meetings and Communications with Creditors | $29,687.00 |
| 6044-030 | General Business Operations | $75,185.50 |
| 6044-040 | Fee/Employment Applications | $45,151.00 |
| 6044-050 | Fee/Employment Objections | $159.00 |
| 6044-060 | Financing | -0- |
| 6044-070 | Claims Administration and Objections | $99,646.50 |
| 6044-080 | Asset Analysis and Recovery | $18,153.50 |
| 6044-090 | Asset Disposition | $608.00 |
| 6044-100 | Plan and Disclosure Statement | $108,816.00 |
| 6044-110 | Employee Benefits/Plans | $3,621.00 |
| 6044-120 | Litigation | $216,485.50 |
| | **FEES DURING SECOND PERIOD** | **$635,429.50** |

On June 11, 2010, this Court entered its "Order on Motion to Establish Procedures for Interim Compensation" (the "Interim Compensation Order"). The Interim Compensation Order allows professionals such as ST&G to seek payment of (i) interim compensation in the amount of eighty percent (80%) of the total fees incurred during a period and (ii) interim reimbursement of expenses in the total amount of one hundred percent (100%) of the expenses incurred during a period.

In accordance with the provisions of the Interim Compensation Order, on August 20, 2010, ST&G filed and served its "Third Statement of Stutman, Treister & Glatt, P.C. for Interim Compensation and Reimbursement of Expenses (July 1, 2010 to July 31, 2010)" (the "Third Monthly Statement"), which sought payment of $133,569.60 in fees (which was 80% of the fees billed in July 2010) and $10,595.73 in expenses. No parties objected to ST&G's Third Monthly Statement, and ST&G received payment from the Debtor.

On September 20, 2010, ST&G filed and served its "Fourth Statement of Stutman, Treister & Glatt, P.C. for Interim Compensation and Reimbursement of Expenses (August 1,

2010 to August 31, 2010)" (the "Fourth Monthly Statement"), which sought payment of $128,658.40 in fees (80% of the fees billed in August 2010) and $11,652.53 in expenses. No parties objected to ST&G's Fourth Monthly Statement, and ST&G received payment from the Debtor.

On October 20, 2010, ST&G filed and served its "Fifth Statement of Stutman, Treister & Glatt, P.C. for Interim Compensation and Reimbursement of Expenses (September 1, 2010 to September 30, 2010)" (the "Fifth Monthly Statement"), which sought payment of $148,782.00 in fees (80% of the fees billed in September 2010) and $9,123.32 in expenses. No parties objected to ST&G's Fifth Monthly Statement, and ST&G received payment from the Debtor.

On November 19, 2010, ST&G filed and served its "Sixth Statement of Stutman, Treister & Glatt, P.C. for Interim Compensation and Reimbursement of Expenses (October 1, 2010 to October 31, 2010)" (the "Sixth Monthly Statement"), which sought payment of $97,333.60 in fees (80% of the fees billed in June 2010) and $6,783.95 in expenses. As of the filing of this Application, the objection period was still pending.

In connection with this Application, ST&G has prepared the following exhibits in accordance with the UST Guidelines, each of which is attached to the separately filed Karasik Declaration:

| Exhibit "B" | Summary of the experience and qualifications of the ST&G attorneys who billed the greatest number of hours in connection with the Debtor's case during the Second Period. |
| --- | --- |
| Exhibit "C" | Summary of hours by professional during the Second Period. |
| Exhibit "D" | Summary of hours by professional during the Second Period. |
| Exhibit "E" | Detailed time records by matter category during Second Period. |
| Exhibit "F" | Summary of expenses incurred by category during Second Period. |

As counsel to the Debtor, ST&G has performed literally hundreds of discrete services and tasks. Descriptions of each of these services and tasks are contained in ST&G's detailed time records, which are attached as Exhibit "E" to the Karasik Declaration ("Exhibit E").

11

As demonstrated by these records, it would be an extremely time-consuming task to describe in detail all of the services provided to the Debtor by ST&G during the Second Period.  What follows, therefore, is a brief summary of the more significant services rendered by ST&G in each of the respective matter categories.

  **1.  Case Administration — Matter No. 010.**

   Generally, the Case Administration category includes services rendered in connection with organization, coordination, and compliance activities.  These activities include the planning and coordination between the Debtor and its professionals, communications between ST&G and the Debtor regarding the status of numerous matters encountered in this case, and communications between ST&G and professionals representing other parties in interest regarding the status of the bankruptcy case.

   Members of the ST&G team periodically conducted internal strategy or status conferences, as needed, to coordinate their efforts, update others on the status of pending matters, and allocate responsibilities.  The frequency of such internal conferences varied depending on the fluctuating demands of the Debtor's case.  Status and strategy conferences enabled junior attorneys and paraprofessionals (with low billing rates) to coordinate with senior attorneys (with higher billing rates) to ensure that all ST&G professionals were performing services appropriate to their respective billing rates.

   ST&G's paraprofessionals devoted time to this category towards the electronic filing and service of pleadings with the Bankruptcy Court.  During the Second Period, ST&G e-filed and served approximately seventy (70) pleadings.  In addition, ST&G's paraprofessionals reviewed the Bankruptcy Court's docket on a daily basis, as well as the District Court dockets with respect to the matters that were the subject of the FDIC's motion to withdraw the reference.  When necessary, Applicant conferred with the Bankruptcy and District Court's clerks to obtain or continue hearing dates on various matters.

   ST&G devoted time in this category to assist the Debtor in the preparation and filing of the Debtor's monthly operating reports.  In addition, Applicant conferred with the Debtor and prepared and filed a status report that provided this Court with information about the

1  Debtor's activities and the general direction of the Debtor's case in connection with this Court's

2  October 7, 2010 status conference.  ST&G attorney Gregory K. Jones prepared for and attended

3  the October 7, 2010 status conference.

4  Finally, this category includes time for organizing files, as well as numerous tasks

5  which do not clearly fit into one of the other matter categories.

6  ST&G spent a total of 93.9 hours rendering services in this category, for which

7  ST&G seeks compensation of $37,916.50.  See Exhibit E.

8  **2.    Meetings Of And Communications With Creditors — Matter No. 020.**

9  During the Second Period, ST&G received numerous inquiries from creditors and

10  equity holders wanting to know generally about the status of the Debtor's case or specific

11  information about their claims.  ST&G responded as appropriate.

12  ST&G also engaged in conferences with the Committee and its counsel, Akin

13  Gump Strauss Hauer & Feld LLP ("Akin Gump"), on a regular basis.  In such conferences,

14  Applicant and Akin Gump discussed a number of issues, including:  (1) the Claim Objection, (2)

15  the ICBI Complaint, (3) the Debtor's tax refunds, (4) the contents of the Plan and Disclosure

16  Statement, (5) proposed hearing dates and continuances, (5) the Debtor's operating reports, and

17  (6) the FDIC's motion to withdraw the reference of the Claim Objection and ICBI Complaint.

18  Since the Debtor's and Committee's interests in this case are closely aligned, ST&G and Akin

19  Gump discussed and reached a consensus on numerous strategies.   Towards the end of the

20  Second Period, ST&G and Akin Gump discussed the parameters of a settlement offer to be made

21  to the FDIC.

22  In addition, ST&G prepared written memoranda and correspondence to the

23  Committee's professionals about many issues.  Engaging in such communication facilitated the

24  cost-effective administration of this case by keeping the Committee fully informed of material

25  developments, when possible, and allowing the Committee and its professionals to disseminate

26  such information to their constituents.

27  Applicant also devoted time in this category towards conferences with the FDIC's

28  counsel.  Among other things, Applicant and the Committee's counsel had a phone conference

13

1   with the FDIC's attorneys after Court approval of the Escrow Stipulation to discuss the contents

2   of the 2009 Returns and strategies designed to maximize the value of the Debtor's tax refunds.

3          During the Second Period, the Committee informally requested the production of

4   numerous documents that covered a number of categories.  Applicant contacted Akin Gump to

5   clarify the content of such requests and to obtain guidance as to the types of documents that the

6   Committee wished to review.  Further, ST&G assisted the Debtor in the review and production

7   of the documents, and responded to the Committee's inquiries on the content of the produced

8   documents.

9          ST&G spent a total of 44.8 hours rendering services in this category, for which

10  ST&G seeks compensation in the amount of $29,687.00.  See Exhibit E.

11         **3.     General Business Operations — Matter No. 030.**

12         ST&G devoted time in this category towards meeting with the Debtor's officers

13  and Board of Directors.  As was the case during the First Period, Mr. Gary E. Klausner (lead

14  attorney for ST&G) conferred with the Debtor's officers and individual Board of Director

15  members on a regular basis.  Additionally, Mr. Klausner prepared for and attended

16  approximately three Board of Director meetings.  The Board of Directors meetings were

17  comprehensive and covered numerous topics.  The deliberations and decisions of the Debtor and

18  Board of Directors at these meetings are confidential.

19         Additionally, during the Second Period, ST&G's tax specialist, Mr. Mark S.

20  Wallace, devoted a significant amount of time towards analyzing various tax issues confronting

21  the Debtor.  The Tax Refunds are potentially the largest assets of its estate, and Mr. Wallace

22  conferred with the Debtor's tax accountant, Ernst & Young, LLP ("E&Y") during the preparation

23  of the Debtor's returns to ensure that the information in the returns was consistent with

24  bankruptcy law and the strategy of the Debtor's case.  Mr. Wallace also conferred with the

25  Committee's tax attorneys and financial advisors about the Debtor's tax returns.

26         In connection with preservation of the NOLs, ST&G also prepared and filed the

27  Debtor's "Motion for Order (A) Limiting Certain Transfers of Equity Interests in the Debtor and

28  (B) Approving Related Notice Procedures" (the "NOL Motion") [Docket No. 219].  The

1    requested relief was designed to provide the Debtor with advance notice of certain transfers that

2    may jeopardize its NOLs, and to enable the Debtor, if necessary, to obtain substantive relief from

3    this Court to protect those NOLs.  Applicant also conferred with Akin Gump about the content of

4    the NOL Motion and the order approving the NOL Motion, which was signed by this Court.

5            Additionally, during the Second Period, ST&G negotiated the terms of the

6    Escrow Stipulation with the FDIC and Committee's counsel.  In August, the Debtor and FDIC

7    filed the Escrow Stipulation, which was approved by this Court.

8            In the General Business Operations category, Applicant also negotiated the terms

9    of a stipulation to reject an unexpired lease with one of the Debtor's prior utility providers.

10   Additionally, Applicant prepared and filed a motion for approval to amend the Debtor's real

11   property lease with 888 Prospect LJ, which resulted in a decrease in the Debtor's monthly rent.

12           ST&G spent a total of 112.1 hours rendering services in the Business Operations

13   category, for which ST&G seeks compensation of $75,185.50.  See Exhibit E.

14       **4.    Fee/Employment Applications — Matter No. 040.**

15           This category includes services rendered in connection with preparing and/or

16   reviewing employment applications, fee applications and monthly professional statements.

17   Pursuant to the terms of the "Order Pursuant to 11 U.S.C. §§ 105 and 331 Establishing

18   Procedures For Interim Compensation and Reimbursement of Expenses of Professionals"

19   [Docket No. 198] (the "Interim Compensation Order"), ST&G prepared and filed monthly fee

20   statements and assisted the Debtor's other professionals in drafting their monthly statements.

21   ST&G also communicated with the Debtor and coordinated the monthly fee payments to all of

22   the professionals employed in the Debtor's case.

23           Additionally, during the Second Period, ST&G prepared and filed its "First

24   Interim Fee Application of Stutman, Treister & Glatt Professional Corporation (Reorganization

25   Counsel for Debtor and Debtor in Possession) for Compensation of Services Rendered and

26   Reimbursement of Expenses Incurred (December 19, 2010 to June 30, 2010" (the "First Interim

27   Fee Application") [Docket No. 244].  ST&G also assisted in the preparation of Silver, Freedman

28   & Taff's (special regulatory counsel to the Debtor) first interim fee application, and

15

1  communicated with the other professionals employed in this case to obtain information about

2  their first fee applications.  After obtaining the relevant fee and expense totals, Applicant

3  prepared the notice of the first fee hearing, which included the fee requests for all professionals.

4  On October 7, 2010, this Court approved all of the fee applications without the need for a

5  hearing.  ST&G prepared the order approving all of the fee applications, which was signed by

6  this Court on October 18, 2010 [Docket No. 352].

7  Additionally, ST&G prepared the employment applications and supporting

8  pleadings for two additional professional firms – (1) KPMG Corporate Finance, LLC

9  ("KPMGCF") as investment bankers for the Debtor; and (2) Fischer Auctions Co., Inc.

10  ("Fischer"), as auctioneer for the Debtor.  In order to properly complete these employment

11  applications, ST&G conferred with both the Debtor and the aforementioned professional firms to

12  obtain conflict check information and details about the scope of their proposed services.  After

13  finalizing the fee applications, ST&G submitted them to the UST in accordance with this Court's

14  Local Rules and responded to inquiries from UST attorneys.

15  This Court entered an order approving Fischer's application on August 11, 2010.

16  However, both the UST and Committee informed the Debtor that they objected to KPMGCF's

17  employment application.  ST&G spent time in the Second Period conferring with both the

18  Committee's counsel and the UST about their objections to KPMGCF's employment.  In

19  November 2010, the Debtor withdrew KPMGCF's application without prejudice to allay

20  Committee concerns.

21  ST&G spent a total of 82.2 hours rendering services in this category, for which

22  ST&G seeks compensation of $47,091.00.[3]  See Exhibit E.

23  **5.  Fee/Employment Objections – Matter No. 050.**

24  This category includes services rendered by ST&G in connection with objections

25  to employment and fee applications.  During the Second Period, ST&G devoted time in this

26  category to reviewing one of FTI Consulting, Inc.'s monthly fee statements.  ST&G spent a total

27

28  [3]    ST&G wrote off $5,000 of fees in this category during the Second Period.

16

of 0.2 hours rendering services in this category, for which ST&G seeks compensation of $159.00.  See Exhibit E.

### 6.    Financing – Matter No. 060.

ST&G did not render any services to the Debtor in the Financing category during the Second Period.

### 7.    Claims Administration And Objections — Matter No. 070.

The "Claims Administrations and Objections" category contains services rendered by ST&G in connection with the review of claims asserted in the Debtor's case.

ST&G devoted the majority of time in this category towards filing the Claim Objection.  The FDIC Claim can be broken down into three categories:  (i) claims based on Bankruptcy Code section 365(o) in the amount of approximately $48.2 million (asserted to be a priority claim by the FDIC) (the "Capital Maintenance Claims"), (ii) the assertion of an entitlement to the Debtor's tax refunds in the amount of approximately $29 million, and (iii) a general unsecured claim in the amount of at least $11.5 million.  The FDIC also asserts in its claim that the Capital Maintenance Claims are entitled to priority status.  If the FDIC's Capital Maintenance Claims are allowed, it is likely that the Debtor's case will be converted to chapter 7.

Therefore, resolution of the Capital Maintenance Claims is of paramount importance in the Debtor's case.  During the Second Period, ST&G first evaluated the FDIC Claim in detail, which is premised on the allegation that the Debtor made a commitment to a regulatory agency to maintain the capital of the Bank.   ST&G then reviewed the Debtor's prior agreements and SEC filings to refute the FDIC's assertion that the Debtor made a capital commitment to a regulatory agency.  Additionally, Applicant thoroughly researched Bankruptcy Code sections 365(o) and 507(a)(9) and the caselaw interpreting both sections.  At the same time, ST&G reviewed the dockets in bankruptcy cases involving similarly situated bank-holding companies.  This review uncovered a number of favorable opinions.

Applicant devoted a significant amount of time preparing the Claim Objection.  In summary, the Claim Objection demonstrated that (i) the Debtor is under no statutory or regulatory commitment to maintain the Bank's capital, (ii) none of the documents referred to in

1    the FDIC Claim evidenced such a commitment by the Debtor, and (iii) the FDIC failed to cite to

2    any other facts or law in support of the Capital Maintenance Claim.  In support of the Claim

3    Objection, Applicant prepared the declarations of Joseph W. Kiley, Sandor X. Mayuga, and

4    Donald Pfeiffer.  ST&G also conferred with the Committee's counsel about the content of the

5    Claim Objection.

6                As anticipated, the FDIC filed an opposition to the Claim Objection.  ST&G

7    reviewed the FDIC's opposition and prepared a reply that addressed each of the FDIC's

8    arguments.  Additionally, Applicant prepared evidentiary objections to the declarations that the

9    FDIC submitted in support of its opposition.

10               As stated above, the FDIC filed a motion for withdrawal of the reference of the

11   Claim Objection (the "Withdrawal Motion").  ST&G negotiated with the FDIC's counsel to

12   attempt to resolve the issues raised by the Withdrawal Motion.  In connection with such

13   negotiations, ST&G prepared four stipulations and orders that continued pleading deadlines and

14   hearing dates, all of which were signed by this Court.

15               ST&G also devoted time in this category towards analyzing proofs of claim that

16   were filed after the bar date and preparing a summary of the proofs of claim filed in the Debtor's

17   case.

18               ST&G spent a total of 187.4 hours rendering services in this category, for which

19   ST&G seeks compensation of $99,646.50.[4]  See Exhibit E.

20       **8.    Asset Analysis and Recovery – Matter No. 080.**

21               This category includes services rendered in connection with reviewing and

22   analyzing the Debtor's assets and potential causes of action that the Debtor's estate may have

23   against other parties.   During the Second Period, ST&G engaged in a number of activities in its

24   representation of the Debtor.

25               First, Applicant devoted time in this category towards preparing and filing the

26   NOL Motion.  For more details on the NOL Motion, see section III.C, supra.  The FDIC filed an

27   
---

28   [4] ST&G wrote off $14,000 in fees in this category during the Second Period.

1    objection to the NOL Motion, stating that certain language preserving the FDIC's rights must be

2    included in the order.  Applicant devoted time in this category to reviewing the FDIC's objection

3    and filed a reply that suggested a compromise between the Debtor and FDIC.  After ST&G filed

4    the reply, the Debtor and FDIC reached a resolution about the language in the order.   After

5    receiving Committee approval, Applicant submitted the order, which was signed by this Court.

6           ST&G also conferred with the Debtor about liquidation of the assets in the

7    Debtor's estate.  The Debtor owned 1,900 shares of Prudential stock that it wished to sell on the

8    open market.  While Applicant believed that the sale of stock would be in the ordinary course of

9    business, out of an abundance of caution, it prepared and filed a "Notice of Intended Action and

10   Opportunity for Hearing Re:  Sale of Prudential Stock" [Docket No. 177].  After the objection

11   period expired, ST&G prepared an order approving the sale of the stock, which was signed by

12   this Court.  The sale of the stock generated approximately $100,000.

13          Applicant also conferred with the Debtor about the sale of its remaining personal

14   property.  After conferring with the UST, the Debtor selected Fischer to serve as auctioneer.  As

15   stated above, ST&G prepared the application to employ Fischer and conduct an auction of the

16   Debtor's personal property.  ST&G conferred with Fischer about the results of the auction and

17   assisted in the preparation of the auctioneer's report.

18          Finally, during the Second Period, ST&G (i) analyzed the Debtor's life insurance

19   policies and conferred with the Debtor about obtaining the surrender value of such policies and

20   collected the larger of the policies; (ii) filed a notice to modify procedures for selling the Debtor's

21   automobiles; (iii) took actions to finalize the transfer of the assets in the Rabbi Trust (as defined

22   in Section III.12.a, infra); (iv) reviewed the Debtor's inventory of assets; and (v) conferred with

23   the Committee about the terms of the order rejecting an executory contract.

24          ST&G spent a total of 37.8 hours rendering services in this category, for which

25   ST&G seeks compensation of $18,153.50.[5]  See Exhibit E.

26

27

28   _____
     [5]  ST&G wrote off $2,000 in fees in this category during the Second Period.

9.       **Asset Disposition – Matter No. 90.**

This category includes services rendered in connection with the sale or other disposition of the Debtor's assets.  During the Second Period, Applicant reviewed a stipulation to reject an unexpired lease and conferred with E&Y about the IRS' review of the Debtor's tax returns.

ST&G spent a total of 0.8 hours rendering services in this category, for which ST&G seeks compensation of $608.00.  See Exhibit E.

10.      **Plan/Disclosure Statement  - Matter No.  100**

The Plan/Disclosure Statement category consists of services rendered in connection with the negotiation and formulation of a plan.  In the middle of the Second Period, the Debtor's plan exclusivity right were set to expire (September 3, 2010).   Given that (i) litigation between the Debtor and the FDIC over the Tax Refunds and Receivership Complaint remained pending and (ii) the Claim Objection remained unresolved, the Debtor believed that it would be premature to file a reorganization plan.  Accordingly, after conferring with the Debtor, ST&G prepared its "Third Motion For Order Extending The Exclusive Periods In Which Only The Debtor May File A Plan and Solicit Acceptances Thereto" [Docket No. 250] (the "Third Exclusivity Motion") and supporting pleadings, which sought an extension of the exclusive period to file a plan to November 17, 2010.

However, the FDIC filed an objection to the Third Exclusivity Motion.  Applicant conferred with Akin Gump and the FDIC's counsel about a possible compromise regarding exclusivity.  After negotiations, the parties agreed to the terms of the "Stipulation Between Imperial Capital Bancorp, Inc. and Federal Deposit Insurance Corporation, As Receiver, Regarding (1) Third Motion For Order Extending The Exclusive Periods in Which Only The Debtor May File a Plan and Solicit Acceptances Thereto; and (2) Status Conference" (the "Exclusivity Stipulation") [Docket No. 293].  Applicant prepared and filed the Exclusivity Stipulation, which provided, inter alia, that the Debtor must file a plan prior to October 4, 2010.  The order approving the Exclusivity Stipulation, which was prepared by ST&G, was signed by this Court on September 2, 2010.

20

1    Shortly thereafter, Applicant conferred with the Debtor's officers and Board

2 members about the terms of a chapter 11 plan and related disclosure statement.  ST&G spent a

3 significant amount of time in September preparing the Plan and Disclosure Statement, and drafts

4 of these two pleadings were provided to the Committee and its attorneys for their review in mid

5 to late September 2010.  ST&G and Akin Gump exchanged emails and conducted meetings

6 about the terms of the Plan, and as a result, Applicant modified the terms of the Plan.  On

7 October 4, 2010, the Debtor filed the Plan and Disclosure Statement.  The Plan provides for a

8 revested Debtor and standing for the Committee to bring actions against insiders.  The

9 Committee informed the Debtor that it wanted the Plan to contain a liquidating trust structure,

10 rather than a revested Debtor, and the Debtor and ST&G evaluated the Committee's request but

11 had not yet reached a decision by the close of the Second Period.

12    Additionally, during the Second Period, ST&G (i) researched Internal Revenue

13 Code sections 269 and 382 to determine the structure of a potential reorganization plan, (ii)

14 reviewed plans submitted by similarly situated bank-holding companies; (iii) conferred with

15 KPMGCF about potential investors that would be involved in a plan of reorganization, (iv)

16 prepared a motion to establish solicitation and confirmation procedures, and (v) conferred with

17 the Debtor's regulatory counsel about the terms of an amended plan.

18    ST&G spent a total of 169.6 hours rendering services in this category, for which

19 ST&G seeks compensation of $110,816.00.[6]  See Exhibit E.

20    **11.    Employee Benefits/Plans – Matter No.  110**

21    During the First Period, ST&G devoted time in this category towards compensation

22 requests for the Debtor's insiders, Joseph W. Kiley, III and Anthony Rusnak.  Specifically, ST&G

23 conferred with Messrs. Kiley and Rusnak about the details of their compensation, reviewed

24 documents that they forwarded to ST&G, and prepared their insider compensation requests.

25 Additionally, Applicant discussed the details of the insider compensation requests with the

26 Committee's counsel.

27

28    [6]    ST&G wrote off $2,000 in fees in this category during the Second Period.

ST&G spent a total of 7.1 hours rendering services in this category, for which ST&G seeks compensation of $3,621.00.  See Exhibit E.

**12.    Litigation — Matter No. 120.**

This category includes services rendered by ST&G in connection with the numerous litigation matters involving the Debtor.  During the Second Period, ST&G led the effort in representing the Debtor with respect to the following matters:  (1) the Rabbi Trust Complaint (as defined below), (2) the ICBI Complaint, (3) the Receivership Complaint, (4) the Relief from Stay Motion, and (5) the Withdrawal Motion.  The results of the litigation concerning the Rabbi Trust Complaint, ICBI Complaint, and Receivership Complaint will establish the amount that creditors will obtain on account of their claims.  The Relief from Stay Motion and Withdrawal Motion were commenced by the FDIC in its effort to take control over the Debtor's assets and required the Debtor to prepare timely responses in order to protect the Debtor's interests.  Accordingly, Applicant devoted a material amount of time in this category in the Second Period.

**a.    Rabbi Trust Complaint**

In May 2010, the Debtor filed its "Complaint Pursuant to Sections 105, 541, and 542 of the Bankruptcy Code for (I) Turnover and Accounting of Estate Assets and (II) For Declaratory Relief" (the "Complaint") against Union Bank of California, N.A. ("Union Bank"), Brian Benson, Timothy Doyle, George Haligowski, Thom Hobbs, David Hunt, Charles Kohl, Rosemary Lennon, Lyle Lodwick, Phillip Lombardi, and Scott Wallace (collectively, the "Rabbi Trust Defendants").  In the Complaint, the Debtor sought entry of an order requiring Union Bank to turn over to the Debtor the assets of the trust (the "Rabbi Trust") created by the "Imperial Capital Bancorp Rabbi Trust Agreement Amended and Restated Effective January 1, 2005" (the "Rabbi Trust Agreement").

During the Second Period, ST&G prepared and obtained default judgments against a number of the Rabbi Trust Defendants.  ST&G also negotiated the terms of stipulated judgments with other Rabbi Trust Defendants.  Further, when necessary, ST&G prepared and filed pretrial conference statements with certain Rabbi Trust Defendants.  Ultimately, the Debtor

1  recovered approximately $6.7 million for its estate, including the recovery of the cash surrender

2  value of certain life insurance policy proceeds.  On September 27, 2010, this Court closed the

3  Rabbi Trust adversary proceeding.

### b.    The ICBI Complaint

5  In order to determine the ownership of the Debtor's Tax Refunds, during the

6  Second Period, Applicant prepared and filed the ICBI Complaint against the FDIC.  Along with

7  seeking a declaratory judgment that the Tax Refunds are property of the Debtor's estate and that

8  the FDIC is a general unsecured creditor of the Debtor's estate, the Complaint seeks a

9  determination that the FDIC's postpetition filing of a Form 56-F with the IRS violated the

10  automatic stay.  The Debtor seeks damages and injunctive relief for this stay violation.

11  Prior to filing the ICBI Complaint, the Debtor conferred with counsel to the

12  Committee about the content of the ICBI Complaint and researched relevant caselaw analyzing

13  (i) whether the Tax Refunds are property of the Debtor's estate and (ii) whether the FDIC

14  violated the automatic stay by filing the Form 56-F.  As discussed below in Section III.12.e,

15  infra, the FDIC has requested that the District Court withdraw the reference of the ICBI

16  Complaint.

### c.    The Receivership Complaint

18  Prior to the Second Period, ST&G prepared the Debtor's proof of claim in the

19  Bank's receivership estate.  After the FDIC denied the Debtor's proof of claim, the Debtor

20  prepared and filed the Receivership Complaint with the District Court and as required by

21  applicable law in order to challenge the FDIC denial.  The Receivership Complaint is premised

22  on a number of legal theories that Applicant researched during the Second Period.  Presently, the

23  Receivership Complaint has been stayed by the Standstill Agreement (as discussed in Section

24  III.12.f, infra).

### d.    The Relief From Stay Motion

26  On August 3, 2010, the FDIC filed its "Motion for Relief From Stay – Personal

27  Property" (the "Relief from Stay Motion") [Docket No. 246].  Through the Relief From Stay

28  Motion, the FDIC sought, inter alia, entry of a court order (i) stating that the filing of the Form

23

1    56-F did not violate the automatic stay or (ii) waiving the automatic stay on a nunc pro tunc

2    basis.  The FDIC also requested in the Relief from Stay Motion that this Court determine that the

3    automatic stay does not apply with respect to the FDIC's potential (a) filing of a claim for a

4    refund and/or a loss return for the 2009 tax year; (b) filing of any amendments to prior years'

5    returns as may be permitted under the law; and (c) taking of such other actions as may be

6    necessary to protect and preserve the claims of the Bank's receivership estate to tax refunds.

7         ST&G reviewed the Relief from Stay Motion and the legal arguments contained

8    therein.  After conferring with the Debtor and Committee, Applicant engaged in research and

9    prepared a response to the Relief from Stay Motion.  At the same time, ST&G conferred with the

10   FDIC's counsel and discussed a resolution to the Relief from Stay Motion.  After the Debtor

11   offered to share the contents of its tax returns with the FDIC, the FDIC agreed to withdraw the

12   Relief from Stay Motion.

13                    **e.    The Withdrawal Motion**

14        On the date that a response to the Claim Objection was due, the FDIC filed its

15   "Motion of the Federal Deposit Insurance Corporation, as Receiver for Imperial Capital Bancorp,

16   Inc., to Withdraw the Reference of:  (1) Adversary Proceeding No. 10-90386-LA;  and (2)

17   Debtor's Objection to 'Capital Maintenance Claims' Portion of Proof of Claim"  (the "Withdrawal

18   Motion").   Through the Withdrawal Motion, the FDIC seeks entry of an order withdrawing the

19   reference of the Claim Objection and ICBI Complaint from this Court to the District Court.

20   Applicant researched the numerous jurisdictional issues raised by the Withdrawal Motion and

21   prepared and filed an opposition to the Withdrawal Motion.  ST&G also reviewed the reply filed

22   by the FDIC.  As the date of the filing of this Status Report, the District Court has neither

23   decided the Withdrawal Motion nor scheduled it for hearing.

24                    **f.    Other Matters**

25        Additionally, in the Litigation category during the Second Period, ST&G (i)

26   drafted a complaint and related motion for a temporary restraining order and preliminary

27   injunction preventing the FDIC from filing the Debtor's tax returns, which was not required to be

28   filed since the parties resolved the Relief from Stay Motion; (ii) researched jurisdictional issues

24

relating to the assertion of FIRREA based claims in bankruptcy proceedings; (iii) outlined the terms of a proposed settlement of all pending litigation among the Debtor, FDIC, and Committee; (iv) negotiated a sixty day standstill agreement (the "Standstill Agreement") among the Debtor, FDIC, and Committee that would allow the parties to engage in settlement discussions; and (v) reviewed the Committee's request for certain of the Debtor's documents and coordinated the turnover of such documents with the Debtor.

ST&G spent a total of 394.1 hours rendering services in this category, for which ST&G seeks compensation of $216,485.50.[7] See Exhibit E.

## IV.

### SUMMARY OF ACTUAL, NECESSARY EXPENSES

ST&G seeks reimbursement of a total of $34,381.25 in actual, necessary expenses incurred during the Second Period. The UST Guidelines require that an application seeking reimbursement of expenses include a summary listing of all expenses incurred, which is attached as Exhibit "F" to the Karasik Declaration. The following description of ST&G's accounting procedures for expenses is provided to assist the Court in reviewing ST&G's expense reimbursement request:

    A.    **Computer Research Services**. In the course of its representation of the Debtor, ST&G found it necessary and cost efficient to use computer research services to research certain issues that arose during this case. ST&G bills the actual cost of using PACER, LEXIS and WESTLAW directly to its clients without any surcharge. The total expenses incurred by ST&G in this category during the Second Period were $7,144.43.

    B.    **Copy Production**. ST&G's internal photocopy projects are electronically logged and billed directly to the client at the cost of twenty-five cents (25¢) per page. This rate is uniformly set by ST&G as its best estimate of the actual costs of furnishing photocopying services, and is comparable to the rate charged by a substantial number of other law firms in the community in both bankruptcy and nonbankruptcy engagements. The total photocopy expenses incurred by ST&G during the Second Period were $21,668.23.

---

[7] ST&G wrote off $6,000 in fees in this category during the Second Period

**C.**    **Long Distance Telephone/Teleconference.**    Long distance telephone charges reflect direct costs for telephone charges (including conference calls) incurred by ST&G in the course of its representation of the Debtor.  These telephone charges are billed by ST&G to all of its clients as direct charges, without adding any surcharge.  The total expenses incurred by ST&G in the long distance telephone expense category during the Second Period were $1,342.89.

**D.**    **Messenger.**    Urgent time deadlines involved in this case occasionally necessitated the use of independent messengers to deliver documents to parties locally, as well as court messengers.  In such instances, ST&G used outside messenger services, and charged its clients the rates set by such messenger services, without adding any surcharges.  The total expenses incurred by ST&G in this category during the Second Period were $485.25.

**E.**    **Postage**.    The cost of transmitting mail by ST&G is billed directly to its clients.  Postage is logged and billed directly to ST&G's clients through use of a computer system.  ST&G calculates postage costs at the rates set by the Postal Service for the weight and class of a given mailing.   The total expenses incurred in the postage expense category during the Second Period were $2,706.12.[8]

**V.**

**APPLICABLE AUTHORITY**

Section 330(a) of the Bankruptcy Code provides that a Bankruptcy Court may award to a professional person employed under sections 327 or 1103 "reasonable compensation for actual, necessary services rendered by [such] . . . attorney. . . and reimbursement of actual, necessary expenses."  11 U.S.C. § 330(a).  Section 330 also provides the following guidelines for the Court to consider with respect to the amount of compensation to be awarded:

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, extent, and the value of such services, taking into account all relevant factors, including-
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;

---

[8]    Additional expenses include the following:  (1) $129.74 for air freight, (2) $325.00 for court filing fees, (3) $212.09 for document processing, (4) $22.50 for parking validation, (5) $90.00 in travel expenses, and (6) $255.00 in miscellaneous expenses.  All expenses were billed directly to the Debtor without any surcharge.

26

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A).

In addition, section 330 prohibits the Court from allowing compensation for "unnecessary duplication of services" or "services that were not . . . reasonably likely to benefit the debtor's estate . . . or . . . necessary to the administration of the case." 11 U.S.C. § 330(a)(4)(A).

In determining the award of compensation, courts generally consider "the nature, the extent, and the value of the professional's services". In re Auto Parts Club, Inc., 211 B.R. 29, 33 (B.A.P. 9th Cir. 1997). However, "the primary method used to determine a reasonable attorney fee in a bankruptcy case is to multiply the number of hours expended by an hourly rate." In re Yermakov, 718 F.2d 1465, 1471 (9th Cir. 1983); In re Powerine Oil Co., 71 B.R. 767, 772 (B.A.P. 9th Cir. 1986) (holding that the fees calculated by multiplying the number of hours by the hourly rate creates a presumption of reasonableness); In re Montgomery Drilling Co., 121 B.R. 32, 39 (Bankr. E.D. Cal. 1990).

Professional services rendered by ST&G during these cases have been itemized by professional, noting each professional's rate, number of hours and total compensation requested. See Exhibit "E" to the Karasik Declaration.

**A.      Reasonableness of Compensation Requested**

ST&G requests compensation for attorneys and paralegals at their respective customary hourly rates. The hourly rate of each professional who rendered services in connection with the Debtor's case during the Second Period is set forth in Exhibit "C" to the Karasik Declaration. Courts have held that the prevailing market rate in the community is indicative of a reasonable hourly rate. See In re Auto Parts Club, Inc., 224 B.R. 445, 449 (Bankr.

27

1   S.D. Cal. 1998).  ST&G regularly conducts a survey of hourly rates charged by law firms that

2   routinely perform work before bankruptcy courts in this district and other districts.  Based on the

3   results of its most recent survey, ST&G believes that the hourly rates charged for its members,

4   paralegals, and law clerks are reasonable and competitive with the hourly rates charged by law

5   firms of comparable size and quality that have similar expertise and level of experience as

6   ST&G.

7           ST&G submits that, based upon the factors to be considered pursuant to

8   section 330 and section 331 of the Bankruptcy Code, the quality of the services provided and the

9   results that have been achieved to date more than justify allowance of the amounts requested.

10  **B.      Novelty And Difficulty of Legal Questions/Skill Requisite to Performing**
            **Legal Services**

11

12          Due to the complex nature of the Debtor's case, it has been necessary that ST&G

13  evaluate difficult factual and legal issues.  Because of the complex questions of law and fact

14  involved in these proceedings, ST&G has had to exercise considerable skill and expertise in

15  dealing with the particular legal issues that arose.

16  **C.      Experience, Reputation And Ability Of The Attorneys**

17          ST&G has an excellent nationwide reputation based upon its experienced and

18  capable group of professionals.  ST&G was selected as Debtor's counsel due to the experience

19  and expertise of its attorneys in the areas of bankruptcy and other insolvency-related areas of

20  law.  ST&G has represented creditors, debtors, creditors' committees and trustees in insolvency

21  cases and adversary proceedings throughout the United States, and maintains an active

22  insolvency practice.  The professional services rendered have been performed by attorneys with a

23  high level of skill in the areas for which they have been employed.  Such experience and

24  expertise has enabled this case to progress in an efficient manner.

25                              **III.**

26                          **CONCLUSION**

27          Based upon all of the foregoing, ST&G respectfully requests that this Court enter

28  an order: (i) allowing, on an interim basis, reasonable compensation in the amount of

                                                                                    28

1  $635,429.50 for actual, necessary services rendered by ST&G during these cases, and

2  reimbursement in the amount of $34,381.25 for actual, necessary expenses incurred by ST&G

3  during these cases; and (ii) granting such other and further relief as the Court deems to be just

4  and proper.

5

6  Dated:  November 30, 2010                    ___/s/ *Gregory K. Jones*_____
                                               GARY E. KLAUSNER
7                                              EVE H. KARASIK
                                               GREGORY K. JONES
8                                              STUTMAN, TREISTER & GLATT
                                               PROFESSIONAL CORPORATION
9                                              Reorganization Counsel for Debtor

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

## DECLARATION OF EVE H. KARASIK[9]

I, Eve H. Karasik, declare as follows:

1.      I am over 18 years of age and have personal knowledge of the matters set forth herein.  If called upon, I would testify competently with respect to these matters.  I submit this declaration ("Declaration") in support of the Second Interim Fee Application of Stutman, Treister & Glatt Professional Corporation (Reorganization Counsel for Debtor and Debtor in Possession ) for Compensation of Services Rendered and Reimbursement of Expenses Incurred (July 1, 2010 to October 31, 2010) (the "Application").

2.      I am a member of Stutman, Treister & Glatt Professional Corporation ("ST&G"), reorganization counsel to the Debtors.  I either rendered or had supervisory responsibility for ST&G's legal services rendered to the Debtors during the Second Period.

3.      Attached hereto are true and correct copies of the following documents:

a.      Exhibit "A" — a copy of the "Order on Application to Employ Stutman, Treister & Glatt Professional Corporation" entered by the Court on January 20, 2010;

b.      Exhibit "B" — summary of the experience and qualifications of those members of ST&G, paralegals, and law clerks, who rendered services to the Debtors during the First Period;

c.      Exhibit "C" - summary of fees incurred for each of the activity categories;

d.      Exhibit "D" - summary, by attorney, paralegal, and law clerk, of the number of hours expended by each attorney, paralegal, and law clerk in rendering services to the Debtors during the Second Period, and their respective hourly rates;

e.      Exhibit "E" - schedules of ST&G's computer billing records for fees incurred in these cases, by billing category, during the Second Period; and

f.      Exhibit "F" -- breakdown of costs incurred by ST&G during the Second Period.

---

[9]      Capitalized terms not otherwise defined herein have the same meaning as in the Application.

30

4.     The Application has been prepared in compliance with the UST Guidelines.  Neither ST&G nor any member of ST&G has any agreement or understanding of any kind or nature to divide, pay over, or share any portion of the fees to be awarded to ST&G in these cases with any other person or attorney, except as among members of ST&G.

5.     There are no claims against or stock or other interests in the Debtor or any affiliates of the Debtor in which a beneficial interest has been acquired or transferred to ST&G or any of its members for its or their account before or after the filing of these cases.

6.     ST&G recently conducted a survey of hourly rates charged by law firms that routinely perform work before bankruptcy courts in this district and other districts.  Based on the results of this survey, ST&G believes that the hourly rates charged by ST&G for its members, paralegals, and law clerks are reasonable and competitive with the hourly rates charged by law firms of comparable size and quality that have similar expertise and experience level as ST&G.  The survey also indicated that ST&G's hourly rates are lower than the rates used by most of the New York based law firms surveyed and the rates of some of the large law firms.

7.     ST&G has not entered into any arrangement or agreement with any person or entity with respect to the sharing of fees and expenses for which ST&G is seeking compensation and reimbursement as set forth herein, except as permitted by section 504(b)(1) of the Bankruptcy Code.  ST&G has not entered into any agreement, express or implied with any other party in interest, or any attorney or other party in interest for the purpose of fixing fees or compensation and reimbursement of expenses incurred.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 30th day of November, 2010, at Los Angeles, California.


/s/ *Eve H. Karasik*
Eve H. Karasik

## *EXHIBIT A*

CSD 1001A [11/15/04]
Name, Address, Telephone No. & I.D. No.
Gary E. Klausner (SBN 69077)
Gregory K. Jones (SBN 181072)
Stutman, Treister & Glatt Professional Corporation
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
Telephone: (310) 228-5600/Fax: (310)228-5788



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re

Imperial Capital Bancorp., Inc.

Debtor.

BANKRUPTCY NO. 09-19431-LA11

Date of Hearing:
Time of Hearing:
Name of Judge: Adler

## ORDER ON

### Application to Employ Stutman, Treister & Glatt Professional Corporation

IT IS ORDERED THAT the relief sought as set forth on the continuation pages attached and numbered two (2)

through __2__ with exhibits, if any, for a total of __2__ pages, is granted. Motion/Application Docket Entry No. __33__

// 
// 
// 
// 
// 
// 

DATED: January 20, 2010

Signature by the attorney constitutes a certification under
Fed. R. of Bankr. P. 9011 that the relief in the order is the
relief granted by the court.

Submitted by:

Stutman, Treister & Glatt, P.C.
(Firm name)

By: /s/ Gregory K. Jones
Attorney for ☑ Movant ☐ Respondent

CSD 1001A

Louis Delaahdler
Judge, United States Bankruptcy Court

29

33

CSD 1001A  [11/15/04] (Page 2)
ORDER ON  Application to Employ Stutman, Treister & Glatt Professional Corporation
DEBTOR:  Imperial Capital Bancorp., Inc.                          CASE NO: 09-19431-LA11

Upon review and consideration of the "Application for an Order Pursuant to 11 U.S.C. Sections 327(A) and 329 Authorizing the
Employment and Retention of Stutman, Treister & Glatt Professional Corporation as Reorganization Counsel for the Debtor
and Debtor in Possession" (the "Application") filed by Imperial Capital Bancorp, Inc., debtor and debtor in possession in the
above-captioned case (the "Debtor") and the "Declaration and Federal Rule of Bankruptcy Procedure 2016(B) Statement of
Gary E. Klausner in Support of Application for an Order Pursuant to 11 U.S.C. Sections 327(A) and 329 Authorizing the
Employment and Retention of Stutman, Treister & Glatt Professional Corporation as Reorganization Counsel for the Debtor
and Debtor in Possession" (the "Klausner Declaration"); and it appearing that the attorneys at Stutman, Treister & Glatt
Professional Corporation are disinterested persons who do not hold or represent an interest adverse to the Debtor's estate in
the matters upon which they are to be engaged, and that their employment for the purposes set forth in the Application is in the
best interest of the Debtor and its estate; notice of which was sufficient and proper, and it appearing that good cause exists for
the relief sought in the Application,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.  The Application is granted as set forth herein.

2.  The Debtor is authorized to employ Gary E. Klausner, Gregory K. Jones, and other members, associates, and attorneys of
counsel to Stutman, Treister & Glatt Professional Corporation as of the commencement of the above-captioned chapter 11
case, for the purposes and on the terms set forth in the Application, with compensation at the expense of the Debtor's estate.

CSD 1001A

*Signed by Judge Louise DeCarl Adler January 20,2010*

***EXHIBIT B***

Exhibit "B"

**BIOGRAPHIES OF MEMBERS OF**
**STUTMAN, TREISTER & GLATT**
**RENDERING SUBSTANTIAL SERVICES TO THE DEBTOR**

**Gary E. Klausner:** Mr. Klausner is a senior shareholder at Stutman, Treister & Glatt. He received a B.A. in 1971 from the University of Maryland and a J.D. with honors in 1974 from the University of Maryland School of Law. He served on the editorial staff of the University of Maryland Law Review from 1972 to 1973. He was admitted to practice law in the State of Maryland in 1974 and California in 1976. He is also admitted to practice before the United States District Court for the Central District of California, the United States Circuit Court of Appeals for the Ninth Circuit and the United States Supreme Court.

Since 1976 Mr. Klausner has devoted his practice exclusively to bankruptcy, corporate reorganization and debtor/creditor matters and has represented chapter 11 debtors, secured and unsecured creditors, creditors' committees, trustees and receivers, licensors and franchisors, purchasers of assets out of bankruptcy cases and parties involved in litigation and appeals in connection with bankruptcy cases. He has handled cases involving a broad range of businesses and industries, including real estate development, hotels and restaurants, manufacturing, aerospace, retail, entertainment, transportation and health care.

In addition to client matters, Mr. Klausner has been actively involved and has held prominent positions in local and national professional organizations and bar associations. Mr. Klausner is a member of the Board of Governors of the Financial Lawyers Conference and served as its President from 1993 through 1994. He is a Board member of the Los Angeles Bankruptcy Forum (serving as its President in 2003-2004), a member of the American Bar Association, Section on Business Law, where he chaired a task force on The Economics of Chapter 11 Practice, and is Chair of the Subcommittee on Bankruptcy Fraud, Crimes and Abuse of the Bankruptcy Process. He is a member of the Los Angeles County Bar Association, where he has served as a member of the Executive Committee of the Commercial Law and Bankruptcy Section as well as being Vice-Chair of the Section's Bankruptcy Committee.

Mr. Klausner lectures frequently on subjects involving bankruptcy and commercial law and has published numerous articles on bankruptcy-related topics. Mr. Klausner authored "Section 1111(b) Look Before You Leap," 2 Bankruptcy Study Group Journal 15 (1986). He also co-authored "Chapter 11: The Bank of Last Resort," The Business Lawyer, November, 1989; Vol. 45, No. 1, and "The New Bankruptcy Rules," 4 Bankruptcy Study Group Journal 64 (1987). Mr. Klausner was an adjunct Professor of Law at Southwestern University School of Law from 1982 through 1986.

The numerous chapter 11 debtors whom Mr. Klausner has represented include Mr. Gasket Co. and Prism Entertainment Corporation, both of which are public companies, Packaging Corporation of America; Super Shops, Inc.; Cannon Pictures; Maguire Thomas Partners; Fifth & Grand, Ltd.; ABC International Traders, Inc.; Maxicare; Watts Health Foundation, Inc., dba UHP Healthcare; and Valley Health System. Mr. Klausner has represented creditors committees in cases such as Consolidated Freightways, Westward Ho Markets, Naki Electronics, Prime Matrix, The Movie Group, American Restaurant Group and Solidus Networks, Inc.

542722v1

**Eve H. Karasik:**  Ms. Karasik is a senior shareholder of ST&G.  She attended the University of California, Berkeley, where she received her B.A. in History in 1984 with High Honors, and then attended the University of Southern California, receiving her J.D. in 1991. At USC she was admitted to the Order of the Coif.

She served as the Managing Editor of the University of Southern California Computer Law and Major Tax Planning Journals. Ms. Karasik is the author of "A Normative Analysis Of Disclosure, Privacy, and Computers: The State Cases," 10 Computer/L.J. 603, 1990.

Ms. Karasik's practice is focused primarily on the representation of operating debtors in chapter 11 cases, as well as creditor and equity committees, in venues throughout the country.  Her more recent debtor engagements include Utah 7000, LLC., *et al* ( Salt Lake City, UT); Falcon Products, Inc., *et al* ( St. Louis, MO); Clark Retail Group *et al* ( Chicago, IL); MJ Research, Inc. ( Reno, NV); and U.S. Aggregates, Inc.*et al* ( Reno, NV).  Creditor and equity committee representations include Eurofresh, Inc. *e tal* ( Phoenix, AZ), USA Capital First Trust Deed Fund ( Las Vegas, NV), Aladdin Gaming, Inc. ( Las Vegas, NV) and Amerco ( Reno, NV).  She also served as counsel to the Trustee in the Securities Investor Protection liquidation proceeding of W.S. Clearing, Inc.  She is currently serving as counsel to the Examiner in the Fontainebleau Las Vegas Holdings, LLC, *et al* ( Miami, FL).

**Mark S. Wallace:**  Mr. Wallace is of counsel to ST&G. He received his A.B., summa cum laude, from Princeton University in 1976, and received his J.D. from Columbia University School of Law in 1977. He was a member of Phi Beta Kappa. He was admitted to the Arizona bar in 1977 and the California bar in 1991.

Mr. Wallace was the Notes and Comments Editor of the Columbia Law Review from 1976 to 1977. He served as a Law Clerk to Judge William B. Enright in the U.S. District Court, Southern District of California from 1977 to 1979.

He is the author of "Practical Aspects of Representing the Failing Business" 44 Major Tax Planning 400 (1992), "Reorganizing The Financially-Troubled Taxpayer", 46 Major Tax Planning 800 (1994), and "Distressed Technology Companies Face Challenging Tax Issues", 24 Los Angeles Lawyer 13 (October 2001) and "Dealing With Individual and Corporate Tax Claims and Litigating with Tax Authorities in Bankruptcy Court", 57 Major Tax Planning 1100.

Mr. Wallace is currently serving as an Adjunct Professor of Law at Loyola Law School, where he teaches bankruptcy and taxation. He served as Adjunct Professor of Law at Arizona State University for the years 1984 through 1986 and 1988.

He is a part Chair of the Bankruptcy and Workouts Committee of the American Bar Association Section of Taxation.

He is a member of the following bar associations: Beverly Hills, Los Angeles County (Member, Commercial Law and Bankruptcy Section; Taxation) and American (Member, Sections of Taxation, Corporate Tax Committee). He is a member of the State Bar of California.

542722v1

**Gregory K. Jones:** Mr. Jones is of counsel to ST&G. He was born in Torrance, California in 1970 and attended the University of California, Los Angeles, where he received a B.A. in Political Science, magna cum laude, in 1992 and a J.D. in 1995.

Mr. Jones was admitted to the state bar of California in 1995 and is authorized to practice in the U.S. District Court, Southern, Central and Northern Districts of California and the U.S. Court of Appeals, Ninth Circuit. At the UCLA School of Law, Mr. Jones was Managing Editor for the UCLA Law Review and author of the article "The Classification and Cram Down Controversy in Single Asset Bankruptcy Cases: A Need for the Repeal of Bankruptcy Code Section 1129(a)(10)," 42 UCLA Law Review 623, 1994. Mr. Jones was the recipient of the 1994 Los Angeles Bankruptcy Forum Writing Award for this article.

Mr. Jones has been involved in numerous bankruptcy cases where he represented debtors, including the County of Orange, L.A. Gear, Liberty House, Inc., StorMedia, Inc., SmarTalk Communications, Boston Markets, U.S. Aggregates, Inc., The Resort as Summerlin, Inc., Watts Health Foundation, Inc., d/b/a UHP Healthcare, and The Kushner-Locke Company. Mr. Jones also represented the Official Committee of Unsecured Creditors in the bankruptcy case of Consolidated Freightways, Inc.

Mr. Jones is a Member of the State Bar of California (Business Law Section); the American Bar Association (Business Law Section); the Los Angeles County Bar Association (Commercial Law and Bankruptcy Section); the Los Angeles Bankruptcy Forum; and the Financial Lawyers Conference.

Reported Cases: In re Colortran, Inc., 210 B.R. 823 (Bankr. 9th Cir. 1997); Expeditors International of Washington, Inc. vs. Citicorp North America, 218 B.R. 507 (Bankr. 9th Cir. 1997); White vs. County of Orange, 88 Cal.App.4th. 298 (Cal. Ct. App. 2001).

**Whitman L. Holt:** Mr. Holt has been a member of ST&G and the California bar since 2005. He is admitted to practice before the U.S. District Courts for the Northern, Central, and Southern Districts of California, as well as before the U.S. Courts of Appeals for the Second and Third Circuits.

Mr. Holt attended Bates College, where he received his B.A.,*magna cum laude*, in 2002 and was elected a member of Phi Beta Kappa. He then attended Harvard Law School, where he received his J.D., *cum laude*, in 2005 and served as an Editor of the Harvard Journal of Law & Public Policy.

Mr. Holt has represented clients across the bankruptcy spectrum. His work on the side of the bankruptcy estate includes representing Fremont General Corporation as a chapter 11 debtor in possession and representing the liquidation trust formed in the *Oakwood Homes* bankruptcy. His work on the side of individual creditors includes representing significant debtholders in the *Lehman Brothers, Washington Mutual, Enron, Calpine,* and *Owens Corning* bankruptcies. Mr. Holt has also represented borrowers in and out of court, secured creditors in and out of bankruptcy, hedge and distressed debt funds, plaintiffs and defendants in bankruptcy-related litigation and appeals, and prospective purchasers of debtors' assets. Mr. Holt also has experience regarding various alternative insolvency regimes, including bank and thrift receiverships under title 12 of the U.S. Code and proceedings for troubled insurers under state law.

Mr. Holt is a regular participant in educational seminars and panels regarding bankruptcy and commercial law. He has also guest-lectured about bankruptcy and tax law at the USC and Loyola Law Schools. Mr. Holt's professional interests include the interface between credit derivatives and bankruptcy, the outer limits of federal bankruptcy jurisdiction and power, and methods of improving the economic efficiency of chapter 11.

542722v1

***EXHIBIT C***

## SUMMARY OF ALL FEES, COSTS AND DISBURSEMENTS BY MATTER

| Matter | | Fees | Costs | Total |
|---|---|---|---|---|
| 06288-0000 | Imperial Capital Bancorp - Chapter 11 12/19/09 | 0.00 | 34,381.25 | 34,381.25 |
| 06288-0010 | Case Administration | 37,916.50 | 0.00 | 37,916.50 |
| 06288-0020 | Meetings of and Communications with Creditors | 29,687.00 | 0.00 | 29,687.00 |
| 06288-0030 | General Business Operations | 75,185.50 | 0.00 | 75,185.50 |
| 06288-0040 | Fee/Employment Applications | 45,151.00 | 0.00 | 45,151.00 |
| 06288-0050 | Fee/Employment Objections | 159.00 | 0.00 | 159.00 |
| 06288-0070 | Claims Administration and Objections | 99,646.50 | 0.00 | 99,646.50 |
| 06288-0080 | Asset Analysis and Recovery | 18,153.50 | 0.00 | 18,153.50 |
| 06288-0090 | Asset Disposition | 608.00 | 0.00 | 608.00 |
| 06288-0100 | Plan/Disclosure Statement | 108,816.00 | 0.00 | 108,816.00 |
| 06288-0110 | Employee Benefits/Plans | 3,621.00 | 0.00 | 3,621.00 |
| 06288-0120 | Litigation | 216,485.50 | 0.00 | 216,485.50 |
| | | 635,429.50 | 34,381.25 | 669,810.75 |

Page 18

## *<u>EXHIBIT D</u>*

## SUMMARY OF FEES FOR THE PERIOD

| Name | Title | Time | Rate | Amount |
|---|---|---|---|---|
| Jeffrey A. Resler | Shareholder | 2.1 | 775.00 | 1,627.50 |
| Gary E. Klausner | Shareholder | 214.5 | 795.00 | 170,527.50 |
| Eve H. Karasik | Shareholder | 199.2 | 725.00 | 144,420.00 |
| Mark S. Wallace | Of Counsel | 66.8 | 735.00 | 49,098.00 |
| Gregory K. Jones | Of Counsel | 364.7 | 510.00 | 185,997.00 |
| Margreta M. Morgulas | Of Counsel | 129.8 | 575.00 | 74,635.00 |
| Emily R. Culler | Of Counsel | 20.7 | 475.00 | 9,832.50 |
| Gabriel I. Glazer | Associate | 20.6 | 375.00 | 7,725.00 |
| Whitman L. Holt | Associate | 5.1 | 450.00 | 2,295.00 |
| Neeta Menon | Associate | 16.8 | 300.00 | 5,040.00 |
| Anthony Arnold | Associate | 9.6 | 325.00 | 3,120.00 |
| Logan S. MacCuish | Law Clerk | 4.3 | 240.00 | 1,032.00 |
| Kendra A. Johnson | Paralegal | 22.3 | 240.00 | 5,352.00 |
| Joanne B. Stern | Paralegal | 54.7 | 240.00 | 13,128.00 |
| Jeff M. Fleiss | Paralegal | 2.5 | 240.00 | 600.00 |
| TOTAL FEES | | 1,133.7 | | 674,429.50 |
| LESS ADJUSTMENTS | | | | (39,000.00) |
| TOTAL: | | | | 635,429.50 |